J-S43034-20

NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellee | : | |
| | : | |
| v. | : | |
| | : | |
| WAYNE MICHAEL CIMINO | : | |
| | : | |
| Appellant | : | No. 1807 WDA 2019 |

Appeal from the PCRA Order Entered November 13, 2019
In the Court of Common Pleas of Washington County
Criminal Division at No(s): CP-63-CR-0001697-2018

BEFORE: SHOGAN, J., STABILE, J., and KING, J.

MEMORANDUM BY KING, J.:                    FILED JANUARY 21, 2021

Appellant, Wayne Michael Cimino, appeals from the order entered in the Washington County Court of Common Pleas, which denied his first petition filed under the Post Conviction Relief Act ("PCRA").[1] We affirm.

The relevant facts and procedural history of this case are as follows. According to the affidavit of probable cause:

> On July 1, 2018 at approximately 2110 hours…[Patrolman] Broda along with [Sergeant] Popeck were dispatched to 809 West Pike St. for a male/female domestic. Prior to arrival Control advised that the male is armed with a firearm and is said to still be inside the residence. Officers arrived on scene at approximately 2114 hours and met the victim in a parking lot at the corner of West Pike St. and N. Shady located in Chartiers Twp. The victim and [Appellant] are husband and wife.
>
> The victim, [Appellant's wife,] was visibly upset as she was

_____

[1] 42 Pa.C.S.A. §§ 9541-9546.

seen to be hysterical and crying. The victim stated that she and [Appellant] had engaged in a verbal argument in their residence at 809 West Pike St. While arguing [Appellant] pushed [the victim] down the steps. [The victim] was able to catch herself and confronted [Appellant] as to why he pushed her. The two began smacking each other back and forth as stated by the victim. [Appellant] then smacked the victim in the back of the head so hard that she stated she saw light and fell to the ground.

The victim then called for her 14 [year old] daughter to call 911 and they went outside with [Appellant] following behind. After a few moments of arguing outside [Appellant] and the victim went back inside. While inside [Appellant] allegedly stopped at his gun safe and retrieved his assault rifle and put it in the face of the victim. The two exchanged words and [Appellant] then pulled out a handgun and also stuck it in the face of the victim. The handgun was described as a small semi-automatic with a silver slide. At one point [Appellant] grabbed a gold in color rifle bullet and placed it in his mouth and said to the victim "Let's all eat bullets today."

After speaking with both parties the victim was brought inside the residence and was able to verify the black in color assault rifle that was located inside the safe to be the one that was pointed at her. At this time the handgun was not located inside the gun safe. When the victim later returned home she called the police back and advised that she located the handgun that she stated was the handgun that was also pointed at her. Both firearms were confiscated by police, packaged and placed into evidence.

The victim stated to officers that she feared for her life when [Appellant] had pointed two firearms at her. The victim also stated that [Appellant] had been drinking all day which also made her fearful for what he may do being he was under the influence. The victim[']s juvenile daughter and son were present at the time of the occurrence of the incident. The daughter witnessed [Appellant] smack the victim in the back of the head. Neither children were present at the time when the firearms were brought out.

(Affidavit of Probable Cause, 7/2/18, at 1).

- 2 -

On October 12, 2018, Appellant entered a guilty plea to aggravated assault, simple assault, and recklessly endangering another person. In exchange for Appellant's plea, the Commonwealth withdrew a charge of harassment and agreed to offer a house arrest and probationary sentence instead of incarceration. The court conducted an oral colloquy to confirm Appellant's plea was knowing, intelligent, and voluntary. (See N.T. Guilty Plea, 10/12/18, at 6). Appellant stipulated to the factual basis in the affidavit of probable cause, and he acknowledged that sufficient facts existed to warrant his guilty plea. (Id. at 7). In addition to the oral colloquy, Appellant signed and initialed a written guilty plea agreement.

The court accepted the guilty plea and sentenced Appellant to twenty-three (23) months in the Intermediate Punishment Program with the first twelve (12) months to be served on electronic home monitoring. The court also imposed a consecutive term of two (2) years of probation. Appellant did not pursue a direct appeal.

On December 10, 2018, Appellant timely filed through counsel his first PCRA petition, alleging plea counsel's ineffectiveness in connection with the entry of his guilty plea. The PCRA court held an evidentiary hearing on August 20, 2019. On November 13, 2019, the court denied PCRA relief. Appellant timely filed a notice of appeal on December 6, 2019. That same day, the PCRA court ordered Appellant to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b). Appellant timely filed his Rule

1925(b) statement on December 20, 2019.

Appellant raises one issue on appeal:

> Whether the PCRA court erred in dismissing Appellant's petition for post-conviction relief where plea counsel provided ineffective assistance by failing to give Appellant adequate information which [led] Appellant to unknowingly and unintelligently enter a guilty plea?

(Appellant's Brief at 4).

Our standard of review of the denial of a PCRA petition is limited to examining whether the evidence of record supports the court's determination and whether its decision is free of legal error. Commonwealth v. Conway, 14 A.3d 101 (Pa.Super. 2011), appeal denied, 612 Pa. 687, 29 A.3d 795 (2011). This Court grants great deference to the findings of the PCRA court if the record contains any support for those findings. Commonwealth v. Boyd, 923 A.2d 513 (Pa.Super. 2007), appeal denied, 593 Pa. 754, 932 A.2d 74 (2007). We give no such deference, however, to the court's legal conclusions. Commonwealth v. Ford, 44 A.3d 1190 (Pa.Super. 2012). Traditionally, credibility issues are resolved by the trier of fact who had the opportunity to observe the witnesses' demeanor. Commonwealth v. Abu-Jamal, 553 Pa. 485, 720 A.2d 79 (1998), cert. denied, 528 U.S. 810, 120 S.Ct. 41, 145 L.Ed.2d 38 (1999). "A PCRA court passes on witness credibility at PCRA hearings, and its credibility determinations should be provided great deference by reviewing courts." Commonwealth v. Johnson, 600 Pa. 329, 356-357, 966 A.2d 523, 539 (2009).

Appellant argues that plea counsel failed to provide accurate information regarding the elements of aggravated assault. (See Appellant's Brief at 13). Specifically, Appellant avers counsel did not advise him that the specific intent element for aggravated assault in his case required proof that the gun used was loaded. (Id. at 23). Appellant insists that a "defendant absolutely cannot possess the specific intent to cause serious bodily injury to a person by pointing an unloaded gun at that person." (Id. at 18). Appellant further claims that he merely "pointed a potentially unloaded gun at his wife while making threats." (Id.) Appellant concludes his guilty plea was unknowing, unintelligent, and involuntary due to counsel's improper advice. We disagree.

Pennsylvania law presumes counsel has rendered effective assistance. Commonwealth v. Williams, 597 Pa. 109, 950 A.2d 294 (2008). When asserting a claim of ineffective assistance of counsel, the petitioner is required to demonstrate: (1) the underlying claim is of arguable merit; (2) counsel had no reasonable strategic basis for his action or inaction; and, (3) but for the errors and omissions of counsel, there is a reasonable probability that the outcome of the proceedings would have been different. Commonwealth v. Kimball, 555 Pa. 299, 724 A.2d 326 (1999). The failure to satisfy any prong of the test for ineffectiveness will cause the claim to fail. Williams, supra.

"Allegations of ineffectiveness in connection with the entry of a guilty plea will serve as a basis for relief only if the ineffectiveness caused the defendant to enter an involuntary or unknowing plea." Commonwealth v.

Moser, 921 A.2d 526, 531 (Pa.Super. 2007) (internal citation omitted). "Where the defendant enters his plea on the advice of counsel, the voluntariness of the plea depends on whether counsel's advice was within the range of competence demanded of attorneys in criminal cases." Id. Pennsylvania law does not require the defendant to "be pleased with the outcome of his decision to enter a plea of guilty[; a]ll that is required is that his decision to plead guilty be knowingly, voluntarily and intelligently made." Id. at 528-29.

A guilty plea will be deemed valid if the record demonstrates the defendant had a full understanding of the nature and consequences of his plea such that he knowingly and intelligently entered the plea of his own accord. Commonwealth v. Rush, 909 A.2d 805, 808 (Pa.Super. 2006). A defendant is presumed to be aware of what he is doing when he enters a guilty plea, and the defendant bears the burden to prove otherwise. Commonwealth v. Pollard, 832 A.2d 517, 523 (Pa.Super. 2003). "A person who elects to plead guilty is bound by the statements he makes in open court while under oath and he may not later assert grounds for withdrawing the plea which contradict the statements he made at his plea colloquy." Id.

The Pennsylvania Rules of Criminal Procedure mandate that pleas be taken in open court and require the court to conduct an on-the-record colloquy to ascertain whether a defendant is aware of his rights and the consequences of his plea. Commonwealth v. Hodges, 789 A.2d 764, 765 (Pa.Super.

2002) (citing Pa.R.Crim.P. 590). Specifically, the court must affirmatively demonstrate the defendant understands: (1) the nature of the charges to which he is pleading guilty; (2) the factual basis for the plea; (3) his right to trial by jury; (4) the presumption of innocence; (5) the permissible ranges of sentences and fines possible; and (6) that the judge is not bound by the terms of the agreement unless he accepts the agreement. Commonwealth v. Watson, 835 A.2d 786, 796-97 (Pa.Super. 2003). Nevertheless, "nothing in [Rule 590] would preclude the use of a written colloquy that is read, completed, signed by the defendant, and made part of the record of the plea proceedings. This written colloquy would have to be supplemented by some on-the-record oral examination." Pa.R.Crim.P. 590 Comment.

The Pennsylvania Crimes Code defines the offense of aggravated assault, in relevant part, as follows:

§ 2702. Aggravated assault

(a)     Offense defined.—A person is guilty of aggravated assault if he:

*     *     *

(4)     attempts to cause or intentionally or knowingly causes bodily injury to another with a deadly weapon;

18 Pa.C.S.A. § 2702(a)(4).

"When no … bodily injury results from the accused's actions, the Commonwealth must prove that he attempted to cause another to suffer such injuries." Commonwealth v. Lopez, 654 A.2d 1150, 1154 (Pa.Super. 1995)

(citations omitted). For aggravated assault purposes, an "attempt" is found where an "accused who possesses the required, specific intent acts in a manner which constitutes a substantial step toward perpetrating a serious bodily injury upon another." Commonwealth v. Gray, 867 A.2d 560, 567 (Pa.Super. 2005), appeal denied, 583 Pa. 694, 879 A.2d 781 (2005). When evaluating whether a defendant acted with the requisite intent to sustain an aggravated assault conviction, our courts employ a totality of the circumstances test. Commonwealth v. Fortune, 68 A.3d 980 (Pa.Super. 2013) (en banc), appeal denied, 621 Pa. 701, 78 A.3d 1089 (2013) (describing various factors that courts may consider to decide whether defendant possessed intent to inflict serious bodily injury). This Court has held sufficient evidence existed to sustain a defendant's conviction for aggravated assault under Section 2702(a)(4), even where a firearm was unloaded. See Commonwealth v. Smith, 626 A.2d 614 (Pa.Super. 1993) (holding evidence was sufficient to sustain appellant's conviction for aggravated assault where appellant pointed gun at victim with finger on trigger, grabbed her by hair, and pushed her to floor; even though gun was unloaded, clip of gun was in appellant's pocket and he threatened to shoot victim; appellant only stopped his assault when one of his wife's co-workers intervened).

Instantly, we initially observe that Appellant testified at the PCRA hearing and did not assert that the firearms at issue were unloaded. Instead, Appellant denied ever using any firearm during this assault. (See N.T. PCRA

Hearing, 8/20/19, at 11-12). Nevertheless, at the guilty plea hearing, Appellant stipulated to the facts set forth in the affidavit of probable cause, which expressly detailed his use of two firearms in this case. As well, Appellant completed and signed an extensive written guilty plea colloquy, containing the following questions and answers:

> 6. Have you discussed with your attorney the elements of each charged offense? <u>Yes</u>.
>
> 7. Have you discussed with your attorney the factual basis of each charged offense? <u>Yes</u>.
>
> 8. Have you discussed with your attorney how the facts in your case prove the elements of each charged offense? <u>Yes</u>.

(Guilty Plea Colloquy, 10/12/18, at 2). Appellant is bound by the statements he made in the written and oral plea colloquies. See Pollard, supra.

Likewise, Appellant testified at the PCRA hearing that at the time of the plea he was satisfied with the services of his attorney, and that he discussed the elements of each offense with his attorney. (See N.T. PCRA Hearing, 8/20/19, at 31). Further, Appellant acknowledged that he discussed the factual basis of each offense with his attorney, and how the facts in his case proved the elements of each offense. Id.

Moreover, Appellant fails to acknowledge that sufficient evidence for aggravated assault can exist in situations where a defendant uses an unloaded gun, depending on the totality of the circumstances. See Smith, supra. See also Fortune, supra. The facts as stipulated to in the affidavit of probable cause showed that Appellant pointed both an assault rifle and a semi-

automatic handgun at the victim's face, after he had physically assaulted her to the point where she fell to the ground so hard that she saw a "light." (See Affidavit of Probable Cause, 7/2/18, at 1). After placing two different guns in the victim's face, Appellant placed a rifle bullet in his own mouth and said "Let's all eat bullets today." (See id.) Under the totality of the circumstances, we cannot agree with Appellant that there was an insufficient factual basis to support his guilty plea, even if the firearms were not loaded. For all of these reasons, Appellant's ineffectiveness claim lacks arguable merit. See Kimball, supra.

Additionally, at the PCRA hearing, Appellant testified to a number of reasons he entered his plea, including, inter alia, his intent to avoid a jail term given his physical condition. (See N.T. PCRA Hearing at 41). Specifically, Appellant stated that one of the reasons he pled guilty was because "[a]t the time [he] had an immobilizer collar around [his] neck. [Appellant] had neck surgery. And with the potential of facing, I believe it was 6 to 36 months in a state penitentiary, if I remember correctly, I certainly would not fare well there for a day, let alone years." (Id).

Likewise, counsel explained why he advised Appellant that it would be in his best interest to enter a plea of guilty, as follows:

> I had concerns about [Appellant's] ability to testify, to testify clearly, and to testify convincingly. His physical ailments also posed a barrier. [Appellant] was in a neck immobilizer. ... He walked with the assistance of a cane. He had difficulty sleeping. Probably difficulty performing normal life functions at that time. […] Walking into the

> courtroom we had an offer of a county jail sentence. After discussions with [the prosecutor], his ability to contact [the victim] with her attorney, they then agreed to reduce the offer and permit [Appellant] to recover at home as part of a house arrest agreement. That seemed to be in [Appellant's] best interest at the time.

(N.T. PCRA Hearing at 83). Counsel also stated he was "concerned about [Appellant's] ability to participate and withstand a trial," and "about [Appellant's] ability to testify credibly in the face of what had been a clear story asserted by the victim." (Id. at 85). Counsel made clear that Appellant was "in support" of the plea agreement because Appellant would be able to "continue his recovery from his physical injuries." (Id. at 79). Counsel further explained that Appellant "would probably be facing jail time in the state penitentiary" if Appellant chose to proceed to trial, and that Appellant "was very clear that given his physical condition that he would not look at jail time under any prospect." (Id. at 67).

In exchange for his guilty plea, the Commonwealth reduced its initial offer of eleven and one-half (11½) to twenty-three (23) months' incarceration to a probationary sentence with house arrest. (Id. at 66). Under these circumstances, counsel had a reasonable basis for advising Appellant to plead guilty. See Kimball, supra. Based upon the foregoing, the record supports the PCRA court's denial of relief. See Conway, supra; Boyd, supra. Accordingly, we affirm.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 1/21/2021