J-S09043-19

## NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P 65.37

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| v. | : | |
| | : | |
| EDWARD D. WILSON, | : | |
| | : | |
| Appellee | : | No. 1458 WDA 2018 |

Appeal from the Order Dated September 20, 2018
in the Court of Common Pleas of Armstrong County
Criminal Division at No(s): CP-03-MD-0000237-2018

BEFORE:    PANELLA, P.J., LAZARUS, J. and STRASSBURGER, J.*

MEMORANDUM BY STRASSBURGER, J.:    **FILED MAY 28, 2019**

The Commonwealth appeals from the order dated September 20, 2018. In that order, the trial court *sua sponte* vacated its July 23, 2018 judgment, which found Edward D. Wilson (Wilson) guilty of indirect criminal contempt (ICC) for violating an emergency order entered pursuant to the Protection from Abuse (PFA) Act, 23 Pa.C.S. §§ 6101-6122. We hold that the trial court erred by not conducting an on-the-record colloquy of Wilson's waiver of his statutory right to counsel that comported with Pa.R.Crim.P. 121, and we remand for proceedings in accordance with this memorandum.

In June 2018,[1] C.J., who lived with Wilson and shares four minor children (Children) with him, filed an emergency PFA petition seeking

---

[1] The emergency PFA petition was filed with the court of common pleas on June 11, 2018, but it is undated.

*Retired Senior Judge assigned to the Superior Court.

protection from Wilson. In the petition, she averred that Wilson kept calling her and she would not answer. He showed up at the house demanding that she tell him what he did, and then struck her in the face. According to C.J., when she called out for Children to call 911, Wilson put his hand on her mouth to stop her from yelling. When C.J. and Wilson's five-year-old son tried to protect her, Wilson threw a pogo stick. Emergency PFA Petition, 6/11/2018, at 1.

On June 8, 2018,[2] a magisterial district judge signed an order granting emergency PFA relief (Emergency PFA Order). Emergency PFA Order, 6/11/2018, at 1. In accordance with section 6110 of the PFA Act, following an *ex parte* hearing, the magisterial district judge found upon good cause that it was necessary to protect C.J. and Children from Wilson. ***Id.***; 23 Pa.C.S. § 6110. The magisterial district judge ordered Wilson to: (1) refrain from abusing C.J. and Children; (2) refrain from contacting C.J. and Children; and (3) be evicted from the residence on Orr Avenue in Kittanning, Pennsylvania. Emergency PFA Order, 6/11/2018, at 1. Thereafter, Appellant was served with the Emergency PFA order.

On June 11, 2018, the next business day, C.J. filed *pro se* a PFA petition with a verified statement of abuse. PFA Petition, 6/11/2018. In the PFA petition, she provided more details about the June 8, 2018 incident to

---

[2] The order was dated June 8, 2018, but not filed with the court of common pleas until the next business day, which was June 11, 2018.

which she referred in her emergency PFA petition. *Id.* at 1-2. She also recounted prior abuse by Wilson. *Id.* at 2. In response to C.J.'s petition, the trial court entered a temporary PFA order and scheduled a hearing. Temporary PFA Order, 6/11/2018, at 1-2. However, after two attempts, the sheriff of Armstrong County was unable to serve Wilson with the PFA petition and temporary PFA order. Sheriff's Return, 6/25/2018. Furthermore, on June 20, 2018, C.J. failed to appear for the PFA hearing, prompting the trial court to dismiss the temporary PFA order and to dismiss the entire PFA matter without prejudice. Order to Dismiss, 6/20/2018, at 1.

Meanwhile, on June 13, 2018, the Commonwealth had filed an ICC complaint against Wilson. ICC Complaint, 6/13/2018, at 1. In the complaint, the Commonwealth accused Wilson of violating the Emergency PFA Order, stating that after he was served with the Emergency PFA Order, he called C.J.'s cell phone, used profanity, and yelled at her for obtaining a PFA against him. *Id.*

On July 23, 2018, the trial court conducted a non-jury trial regarding the ICC complaint. Wilson appeared *pro se*. The Commonwealth called two witnesses: Officer Donald Blose of the Kittanning Borough Police Department and C.J. Wilson testified on his own behalf. At the conclusion of trial, the trial court entered an order adjudging Wilson to be in contempt, and ordered him to appear for sentencing. Order, 7/24/2018, at 1.

At the September 20, 2018 sentencing hearing, Wilson again appeared *pro se*. During the hearing, the trial court *sua sponte* vacated the July 24, 2018 order finding Wilson guilty and dismissed the ICC complaint, stating that Wilson had "represented[ed] that the underlying PFA order[,] which gave rise to the [ICC] Complaint[,] ha[d] been dismissed." N.T., 9/20/2018, at 8; Order, 9/20/2018, at 1.

The Commonwealth timely filed a notice of appeal. Both the Commonwealth and the trial court complied with Pa.R.A.P. 1925. The Commonwealth presents one issue on appeal: "Did the trial court err and/or abuse its discretion when it *sua sponte* vacated [Wilson's ICC] conviction and dismissed the complaint at the time of sentencing?" Commonwealth's Brief at 1 (some capitalization altered).

Before we may address the merits, we *sua sponte* address a procedural issue: whether Wilson's right to counsel was satisfied.[3] No

_____

[3] We are mindful that typically courts may not raise issues *sua sponte*. **Commonwealth v. Colavita**, 993 A.2d 874, 891 (Pa. 2010) ("[C]ourts generally should not act *sua sponte* to raise claims or theories that the parties either did not raise below or failed to raise in their appellate pleadings."); **In re Estate of Tscherneff**, ___ A.3d ___, 2019 WL 406651, at *5 n.3 (Pa. Super. 2019) ("There are a few discrete, limited non-jurisdictional issues that courts may raise *sua sponte*."). However, satisfaction of a party's right to counsel, however derived, is an issue this Court routinely addresses *sua sponte*. **See Commonwealth v. Johnson**, 158 A.3d 117, 121 (Pa. Super. 2017) (holding that "this Court has a duty to review whether [Johnson] properly waived his right to counsel prior to his suppression hearing even though [Johnson] has not asserted this issue on appeal"); **Commonwealth v. Stossel**, 17 A.3d 1286, 1290 (Pa. Super. *(Footnote Continued Next Page)*

counsel has entered an appearance on behalf of Wilson on appeal. Wilson did not file a brief or otherwise participate *pro se* in this appeal. As noted, Wilson proceeded *pro se* below. At trial, the trial court inquired whether Wilson had legal counsel, and Wilson responded "[n]o." N.T., 7/23/2018, at 3. The trial court then asked Wilson if he was representing himself, and Wilson said he was. *Id.* There was no further discussion regarding Wilson's *pro se* status. *Id.* The same exchange occurred almost verbatim at the sentencing hearing. N.T., 9/20/2018, at 3.

The PFA Act permits a court to hold an individual subject to a protection order in contempt of such order and to punish the defendant in accordance with the law. 23 Pa.C.S. § 6114(a).

> A charge of [ICC] consists of a claim that a violation of an order or decree of court occurred outside the presence of the court. Where a PFA order is involved, an [ICC] charge is designed to seek punishment for a violation of the protective order. The role of criminal contempt and that of many ordinary criminal laws seem identical - protection of the institutions of our government and enforcement of their mandates. Thus, as with those accused with other crimes, one charged with [ICC] is to be provided the safeguards which statute and criminal procedures afford.

*(Footnote Continued)* ⸻

2011) (holding *sua sponte* that "where an indigent, first-time PCRA petitioner was denied his [rule-based] right to counsel - or failed to properly waive that right - this Court is required to raise this error *sua sponte* and remand for the PCRA court to correct that mistake"); *see also In re Adoption of L.B.M.*, 161 A.3d 172, 183 (Pa. 2017) (Opinion Announcing the Judgment of the Court, with five Justices joining this section) ("Whether the right to counsel is conferred by constitution or statute, the right having been conferred must be protected.").

- 5 -

*Commonwealth v. Baker*, 722 A.2d 718, 720-21 (Pa. Super. 1998) (*en banc*).  One such safeguard afforded the defendant is the statutory right to counsel.[4]  **See** 23 Pa.C.S. § 6114(b)(3) ("The defendant shall not have a right to a jury trial on a charge of ICC. However, the defendant shall be entitled to counsel."); **accord Commonwealth v. Ashton**, 824 A.2d 1198, 1203 (Pa. Super. 2003) (including "the assistance of counsel" as one of the procedural safeguards for defendants charged with ICC).

Based on the foregoing, we will address whether the court erred in permitting Wilson to proceed *pro se* before addressing the merits.  When a defendant seeks to waive the right to counsel in a criminal proceeding before a judge after the preliminary hearing, "the judge shall ascertain from the defendant, on the record, whether this is a knowing, voluntary, and intelligent waiver of counsel."  Pa.R.Crim.P. 121(C).  "Failing to conduct an on[-]the[-] record colloquy pursuant to Rule 121(C) before allowing a

_____

[4] Whether a defendant charged with ICC also has a constitutional right to counsel at all stages of the contempt proceedings is less clear.  In **Commonwealth v. Moody**, 125 A.3d 1, 14 (Pa. 2015), our Supreme Court examined the trajectory of several United States Supreme Court and Pennsylvania cases regarding the right to counsel in non-felony cases to determine when the Sixth and Fourteenth Amendment right to counsel attaches in direct criminal contempt cases.  Although the Court briefly and indirectly discussed the right to counsel in ICC cases as a point of comparison, no recent case has analyzed directly and thoroughly the nuances of such a right in the ICC context.  Because we raise this issue *sua sponte*, and the constitutional right to counsel is not necessary to our holding here today, we decline to engage in such an analysis at the present time.

defendant to proceed *pro se* constitutes reversible error." ***Johnson***, 158 A.3d at 121. "In order to make a knowing and intelligent waiver, the individual must be aware of both the nature of the right and the risks and consequences of forfeiting it." ***Commonwealth v. Houtz***, 856 A.2d 119, 123 (Pa. Super. 2004). "[W]aiver [cannot] be presumed where the record is silent. The record must show, or there must be an allegation and evidence which show, that an accused was offered counsel but intelligently and understandingly rejected the offer. Anything less is not waiver." ***Commonwealth v. Monica***, 597 A.2d 600, 603 (Pa. 1991).

Rule 121(A)(2) provides as follows regarding a sufficient waiver.

(2) To ensure that the defendant's waiver of the right to counsel is knowing, voluntary, and intelligent, the judge or issuing authority, at a minimum, shall elicit the following information from the defendant:

> (a) that the defendant understands that he or she has the right to be represented by counsel, and the right to have free counsel appointed if the defendant is indigent;

> (b) that the defendant understands the nature of the charges against the defendant and the elements of each of those charges;

> (c) that the defendant is aware of the permissible range of sentences and/or fines for the offenses charged;

> (d) that the defendant understands that if he or she waives the right to counsel, the defendant will still be bound by all the normal rules of procedure and that counsel would be familiar with these rules;

(e) that the defendant understands that there are possible defenses to these charges that counsel might be aware of, and if these defenses are not raised at trial, they may be lost permanently; and

(f) that the defendant understands that, in addition to defenses, the defendant has many rights that, if not timely asserted, may be lost permanently; and that if errors occur and are not timely objected to, or otherwise timely raised by the defendant, these errors may be lost permanently.

Pa.R.Crim.P. 121(A)(2).

In the instant case, the trial court's inquiries of Wilson fall short of the on-the-record colloquy required by Rule 121. Merely asking whether Wilson planned to proceed *pro se* does not comport with the detailed requirements of Rule 121(A)(2). It is unclear whether Wilson even knew he had the right to counsel. Therefore, we conclude that the trial court erred by not conducting an on-the-record colloquy that comported with Rule 121.

Ordinarily, once we determine that a criminal defendant has been deprived of his right to counsel by proceeding *pro se* without a valid on-the-record waiver, we would simply vacate the judgment of sentence and remand for a new trial. **See Johnson**, 158 A.3d at 123 (vacating and remanding for a new suppression hearing and new trial). However, in this case, there is no judgment of sentence to vacate, because the trial court dismissed the ICC complaint prior to sentencing. Moreover, remanding for a new trial leaves Wilson in a more detrimental position than he would be in if we were to affirm the order or grant the relief that the Commonwealth seeks

on appeal.[5]  Furthermore, if Wilson should have had counsel appointed on his behalf in the proceedings below, he would be entitled to counsel on appeal.  *See* Pa.R.Crim.P. 122, Comment ("In both summary and court cases, the appointment of counsel to represent indigent defendants remains in effect until all appeals on direct review have been completed.").

Therefore, we believe the best course of action is to remand this case to the trial court to conduct a hearing to determine whether Wilson wishes to proceed *pro se* or with counsel in this appeal.  The trial court shall advise Wilson of his right to counsel in accordance with Rule 121 before determining whether Wilson wishes to proceed *pro se* or with counsel.  In the event that Wilson wishes to proceed with counsel, but he is indigent and cannot afford private counsel, the trial court shall appoint counsel forthwith to represent Wilson in this appeal and any subsequent proceedings in this matter.  If Wilson wishes to proceed *pro se* and waive his right to counsel, the trial court must conduct an on-the-record colloquy of Wilson that complies with Rule 121 to ensure that Wilson is waiving his right to counsel knowingly and intelligently.  Within 45 days of this memorandum, the trial court shall inform this Court of the results of the hearing and forward the transcript of the hearing to the Superior Court prothonotary.

Case remanded with instructions.  Panel jurisdiction retained.

---

[5] The Commonwealth requests that we reinstate the ICC complaint and conviction, and remand for resentencing.  Commonwealth's Brief at 7.